******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

MARY BETH FARRELL ET AL. *v.* JOHNSON
AND JOHNSON ET AL.
(AC 39472)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiffs, M and V, sought to recover damages from the defendants, various medical providers, for, inter alia, innocent misrepresentation in connection with a surgery performed by the defendant surgeon, H, on M in which H implanted a transvaginal mesh product in M for the purpose of alleviating pain. M experienced pain after the surgery and despite several procedures to treat the pain and remove the product, M continued to experience pain and was eventually diagnosed with nerve damage from the procedure. The plaintiffs thereafter commenced the present action, alleging, inter alia, innocent misrepresentation. Prior to trial, several defendants withdrew from the case, leaving only H and G Co. as defendants. The trial court directed a verdict in favor of the defendants on the plaintiffs' innocent misrepresentation claim. Subsequently, the jury returned a verdict in favor of the defendants on the remaining counts. From the judgment rendered thereon, the plaintiffs appealed to this court. *Held:*

1. The trial court did not abuse its discretion in permitting reference to the former defendants and determining that the plaintiffs' counsel had opened the door to those references; the plaintiffs' claim that reference to the former defendants was extremely prejudicial and served to improperly inform the jury that the plaintiffs received money from a former defendant was unavailing, as the questions that the defendants' counsel asked did not seek to elicit any details about the circumstances regarding the removal of the other parties, did not mention a settlement, and did not state an amount of damages that the plaintiffs may have received from the former defendants, and the court allowed the defendants' counsel to give context to the questions that the plaintiffs' counsel had asked regarding the fee arrangement.

2. The trial court did not abuse its discretion in excluding from evidence two journal articles that discussed the experimental and risky nature of transvaginal mesh products, that court having properly determined that the articles were inadmissible hearsay and did not fall within a hearsay exception; although the plaintiffs claimed that portions of the journal articles were admissible to establish that H knew or should have known of the experimental and risky nature of the product, and that the articles were therefore being offered to prove notice, the trial court properly determined that the portions of the articles that the plaintiffs sought to admit were being offered to prove the facts asserted within them, as the crux of the plaintiffs' claim was that H knew or should have known of the experimental and risky nature of transvaginal mesh products and the contents of the articles asserted precisely that claim, and the plaintiff could not establish that H knew or should have known of the experimental and risky nature of the products without offering the contents of the articles for their truth.

3. The trial court properly directed a verdict in favor of the defendants on the plaintiffs' claim for innocent misrepresentation; innocent misrepresentation claims primarily apply to business transactions, typically between a buyer and seller, and concern principles of warranty, the plaintiffs and the defendants in this case were not parties to a commercial transaction, as the plaintiffs did not allege breach of warranty claims against the defendants or that the defendants received some benefit as a result of M's reliance on H's alleged misrepresentation, and although case law has acknowledged that claims for innocent misrepresentation are not limited to contracts for the sale of goods, it was unclear whether such claims are applicable to cases such as this, where the plaintiffs were claiming a lack of informed consent and were not involved in a commercial transaction, and the Restatement suggests that there must be a form of business transaction involved when making a claim for innocent misrepresentation.

4. The plaintiffs could not prevail on their claim that the trial court improperly declined to instruct the jury on the concept of misrepresentation due to H's lack of sufficient knowledge in accordance with their request to charge; the court's charge sufficiently conveyed the substance of the plaintiffs' requested charge, even though the court did not use the precise language requested by the plaintiffs, and, thus, the substance of the requested instructions was fairly and substantially included in the court's jury charge, as the court instructed that if H did not disclose all the information he knew about the product and conveyed a false impression, on which the plaintiffs relied to their detriment, then the jury could hold the defendants liable for negligent or intentional misrepresentation.

Argued April 16—officially released September 18, 2018

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged negligent misrepresentation, and for other relief, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before the court, *Zemetis, J.*; thereafter, the court directed a verdict in favor of the defendants on the plaintiffs' innocent misrepresentation claim; subsequently, the jury returned a verdict in favor of the defendant Brian J. Hines et al. on the remaining counts; thereafter, the trial court rendered judgment thereon; subsequently, the court denied the plaintiffs' motion to set aside the verdict, and the plaintiffs appealed to this court. *Affirmed.*

*Brenden P. Leydon*, with whom, on the brief, was *Jacqueline E. Fusco*, for the appellants (plaintiffs).

*David J. Robertson*, with whom, on the brief, were *Madonna A. Sacco*, *Heidi M. Cilano*, *Nancy M. Marini*, and *Christopher H. Blau*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiffs, Mary Beth Farrell and Vincent Farrell,[1] appeal from the judgment of the trial court, rendered following a jury trial, in favor of the defendants Brian J. Hines, M.D., and Urogynecology and Pelvic Surgery, LLC (Urogynecology).[2] On appeal, the plaintiffs claim that the court (1) abused its discretion by allowing the defendants to refer during trial to prior defendants, the claims against whom had been withdrawn; (2) abused its discretion by excluding from evidence as hearsay two journal articles; (3) improperly directed a verdict in favor of the defendants on the plaintiffs' claim of innocent misrepresentation; and (4) improperly failed to instruct the jury on the concept of misrepresentation due to Hines' lack of sufficient knowledge.[3] We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our consideration of this appeal. At some point in 2007, Mary Beth's gynecologist diagnosed her with pelvic organ prolapse.[4] As her condition worsened, her gynecologist recommended that she see Hines, a surgeon, with whom she consulted in late October, 2008. Hines explained that implanting a mesh product into Mary Beth would be the best surgery to treat her condition. Mary Beth agreed to the surgery, and Hines performed the procedure on November 19, 2008.

Approximately four days after Mary Beth had returned home from the surgery, she experienced excessive bleeding and abdominal pain. Hines initially diagnosed her with two large pelvic hematomas. Mary Beth continued to follow up with Hines; however, she continued experiencing pain. In February, 2009, Mary Beth underwent another surgery during which Hines attempted to remove the mesh product that he had implanted in her. Hines removed as much of the mesh as possible; however, some of the mesh could not be removed because it was embedded in tissue. After a second surgery to remove the mesh in the summer of 2009, Mary Beth still experienced pain and was diagnosed with damage to the pudendal and obturator nerves.

Mary Beth underwent several additional procedures, such as nerve blocks and mesh removal, but these procedures did not eliminate the pain. The pain that she experienced eventually caused her to resign her position as a teacher so she could focus on her health. At the time of trial in January, 2016, Mary Beth was considering additional surgery, which she described as "major."

The plaintiffs served their original complaint on November 15, 2011. The plaintiffs filed the operative, third amended complaint on December 4, 2015, alleging the following claims against the defendants: (1) lack of

informed consent; (2) innocent misrepresentation; (3) negligent misrepresentation; (4) intentional misrepresentation; and (5) loss of consortium.

The plaintiffs' case was tried to a jury in January, 2016. On January 19, 2016, the court directed a verdict in favor of the defendants on the plaintiffs' innocent misrepresentation claim. On January 20, 2016, the jury returned a verdict for the defendants on the remaining counts, and the court entered judgment on July 13, 2016. The plaintiffs' motion to reargue was denied and this appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiffs' first claim is that the court abused its discretion by allowing the defendants to refer to parties that had been removed from the case. The plaintiffs argue that reference to the former defendants was "extremely prejudicial and served solely to seek to improperly inform the jury [that the] [p]laintiff[s] received money from a former defendant." In response, the defendants argue that the plaintiffs opened the door to the admission of this evidence and, alternatively, that any error was harmless.

The following additional facts and procedural history are relevant to the resolution of this claim. The plaintiffs commenced this action against several entities, in addition to Hines and Urogynecology, alleging products liability claims and violations of the Connecticut Unfair Trade Practices Act. See footnote 2 of this opinion. Before trial commenced, the plaintiffs withdrew their claims against all defendants except Hines and Urogynecology. Prior to the start of evidence, the plaintiffs filed a motion in limine in which they sought to exclude from evidence any testimony regarding the resolution of the claims against the former defendants. The court granted the motion and, prior to the start of evidence, instructed the jury not to consider the absence of the former defendants.[5] During the direct examination of Mary Beth, the following exchange occurred:

"[The Plaintiffs' Counsel]: [Mary Beth], do you have an agreement with my firm for the attorney's fees in this case?

"[The Witness]: Yes, we do.

"[The Plaintiffs' Counsel]: What is that agreement?

"[The Witness]: To pay you a third of any fees that occurred in the case.

"[The Plaintiffs' Counsel]: One third of any recovery?

"[The Witness]: Yes. One third of any recovery that we receive."

Subsequently, on cross-examination, the following exchange occurred:

"[The Defendants' Counsel]: You're paying your attorneys one third of any recovery you receive from any defendant, correct?

"[The Witness]: Correct.

"[The Defendants' Counsel]: That would include any prior defendants, correct?

"[The Plaintiffs' Counsel]: Objection. Relevance, your Honor?

"The Court: No. You've managed to open the door with regard to this. No further evidence will be received on that particular point. You may inquire.

"[The Defendants' Counsel]: I can ask my last question?

"The Court: You can ask.

"[The Defendants' Counsel]: And that is one third of any recovery that you receive from any defendant, whether it be Stamford Hospital, Ethicon, Johnson & Johnson?

"[The Plaintiffs' Counsel]: Objection. Your Honor just said no further evidence on that subject.

"The Court:  .  .  .  I'm going to allow that question. There will be no evidence as to whether the previous defendants, who are now removed from the case, have been removed from the case for any reason at all other than that they are no longer parties to the case, whether there were settlements, what the amount, if any, or whether there were other reasons that they were removed from the case, whether they be legal or tactical or otherwise is not for this jury. As we started, [the former defendants] were here when we picked this jury. So [the jury is] well aware other parties were once participants in this case, and they are no longer participants in this case. And the reason and the nature of their exit is none of [the jury's] concern. We are only concerned with the case that we have at hand."

At the close of evidence, the plaintiffs requested that the court again issue the instruction that it issued at the beginning of the case, in which it instructed the jury not to consider the absence of the former defendants. The court denied this request.

General Statutes § 52-216a provides in relevant part: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury." "It is readily apparent from a common sense reading of § 52-216a that its legislative objective was to prohibit

in a trial to a jury [the jury's] knowledge of any agreement or release involving a tortfeasor at any time during the trial of the cause of action . . . against another tortfeasor." (Internal quotation marks omitted.) *Peck* v. *Jacquemin*, 196 Conn. 53, 58–59, 491 A.2d 1043 (1985).

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating the inquiry has made unfair use of the evidence. . . . This rule operates to prevent a [party] from successfully excluding inadmissible . . . evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the [other party] to place the evidence in its proper context. . . . The doctrine of opening the door cannot, of course, be subverted into a rule for injection of prejudice. . . . The trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter, and should permit it only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. . . . Thus, in making this determination, the trial court should balance the harm to [one party] in restricting the inquiry with the prejudice suffered by the [other party] in allowing the rebuttal. . . . We review for [an] abuse of discretion the trial court's determination that a party has opened the door to otherwise inadmissible rebuttal evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 309 Conn. 469, 479–80, 72 A.3d 48 (2013).

As previously set forth, the plaintiffs' counsel asked Mary Beth about the plaintiffs' fee agreement with counsel. On cross-examination, the defendants' counsel elicited more details about the fee agreement; specifically, whether it applied to the former defendants. As the court noted, the plaintiffs' counsel had opened the door to this line of questioning. The questions that the defendants' counsel asked did not seek to elicit any details about the circumstances regarding the removal of the other parties, did not mention a settlement, and did not state an amount of damages that the plaintiffs may have received from the former defendants. Instead, the court allowed the defendants' counsel to give context to the questions that the plaintiffs' counsel asked regarding the fee agreement. Therefore, the court did not abuse its discretion by determining that the plaintiffs' counsel had opened the door and permitting reference to the former defendants.[6]

II

The plaintiff's next claim on appeal is that the court abused its discretion by excluding from evidence two journal articles that discussed the experimental and risky nature of transvaginal mesh products. The plaintiffs argue that the journal articles were admissible to show notice—i.e., that Hines knew or should have known of the experimental and risky nature of transvaginal mesh products—and, therefore, were not hearsay because they were not being offered to prove the truth of the matters asserted therein. The defendants respond that the court properly excluded the articles because the experimental and risky nature of the mesh products was exactly what the contents of the articles discussed. We agree with the defendants.

The following additional facts and procedural history are relevant to this claim. The plaintiffs attempted to admit into evidence two journal articles: (1) American College of Obstetricians and Gynecologists Practice Bulletin 79 Re: Pelvic Organ Prolapse, 79 Obstetrics and Gynecology (Feb. 2007, Vol. 109, No. 2, pt.1), p. 468 (ACOG Bulletin), and (2) Donald Ostergard, *Lessons from the Past: Directions for the Future*, International Urogynecology Journal 18:591–598 (2007) (Ostergard article). The defendants objected to the admission of these articles on hearsay grounds.

The portion of the ACOG Bulletin that the plaintiffs sought to admit provided: "Given the limited data and frequent changes in the marketed products (particularly with regard to type of mesh material itself, which is most closely associated with several of the postoperative risks, especially mesh erosion), the procedures should be considered experimental and patients should consent to surgery with that understanding." In addition, there were three portions of the Ostergard article that the plaintiffs sought to admit, specifically: (1) "a physician can inform the patient of its experimental nature."; (2) "[t]here is a need for more information with specific graft materials to clarify success and adverse event rates"; and (3) "[w]ithout an adequate evidence base, practitioners cannot determine whether an innovative technique is the most safe and effective method for treating a patient." The plaintiffs argued that these portions of the articles established that Hines knew or should have known of the experimental and risky nature of the mesh products, and that the articles were therefore being offered to prove notice and not to prove the truth of the matters asserted therein.

The court sustained the defendants' objection to the admission of these articles. In doing so, the court stated that the articles are "being offered on the issue of notice and, therefore . . . they are not being offered for the truth of the matter contained. That's an argument I don't understand in this particular case. Whether these articles exist[ed] prior to the date of [Mary Beth's] surgery is not the issue in this case. The issues in the case

are the adequacy and appropriateness of the explanation of risk, benefit and alternatives that [Hines] gave to [Mary Beth] on the various dates she went to see him so she could give informed consent to this surgery. The existence of these articles doesn't bear on that.

"So the problem I have is, I think that these are hearsay documents. . . . And the fact they're being described as being offered for notice, I think that [the defendants'] most recent brief is exactly on point with my thinking; that is, that these are actually being offered for the truth of the matter contained."

The court continued that it thought that the plaintiffs "want[ed] the truth of the matter contained in these articles to be offered to the jury. The fact a medical controversy exists, the fact that in these various authors' opinions inadequate study has been done, that physicians have an obligation to advise their patients that inadequate study has been done, that there's not a scientific basis for the use of this mesh product and implantation of this product into patients absent such scientific basis and study. I'm understanding that's the thrust of the case, but that's the truth of the matter contained in each of these three articles. That's why I think they are hearsay."

We first set forth our standard of review for evidentiary issues. "When presented with an evidentiary issue . . . our standard of review depends on the specific nature of the claim presented. . . . Thus, [t]o the extent a trial court's admission of evidence is based on an interpretation of the [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . .

"A trial court's decision to admit evidence, *if premised on a correct view of the law*, however, calls for the abuse of discretion standard of review. . . . In other words, only after a trial court has made a legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought. . . . A paradigmatic example of this distinction would be a trial court's conclusion that a hearsay statement bears the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule, which would be reviewed for an abuse of discretion. . . . By contrast, the question of whether the trial court properly could have admitted that statement under the residual exception if the admission of that type of statement expressly was barred under another hearsay exception would present a question of law over which the appellate courts exercise plenary review." (Citations omitted;

emphasis in original; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 653–54, 137 A.3d 1 (2016).

"The hearsay rule forbids evidence of out-of-court assertions to prove the facts asserted in them. If the statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay. . . . This exclusion from hearsay includes utterances admitted to show their effect on the hearer." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 837–38, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) Id., 838. "Statements of others that show the effect on the hearer or reader are not hearsay on issues such as notice, intent, reasonableness or good faith on the part of the hearer or reader. Before being admitted for such a purpose, the state of mind of the hearer or reader must be shown to be relevant to a material issue in the case." C. Tait & E. Prescott, Connecticut Evidence (5th Ed., 2014) § 8.8.1, p. 518. "A statement is not hearsay if it is offered to prove notice to the hearer." Id., 519; see also *Rogers* v. *Board of Education*, 252 Conn. 753, 766–67, 749 A.2d 1173 (2000).

In the present case, the court properly determined that the portions of the ACOG Bulletin and the Ostergard article that the plaintiffs sought to admit were being offered to prove the facts asserted within them. The crux of the plaintiffs' claim was that Hines knew or should have known of the experimental and risky nature of transvaginal mesh products and, therefore, he should have so informed Mary Beth. The contents of the ACOG Bulletin and the Ostergard article asserted precisely that—the risky and experimental nature of transvaginal mesh products, and the need for physicians to explain the risks of implanting such devices in patients. The plaintiffs simply could not establish that Hines knew or should have known of the experimental and risky nature of the products without offering the contents of the articles for their truth. The court properly determined that the articles were inadmissible hearsay and did not fall within a hearsay exception and, accordingly, did not abuse its discretion in excluding the articles from evidence.[7]

### III

The plaintiffs' third claim on appeal is that the court improperly directed a verdict in favor of the defendants and refused to instruct the jury on their claim of innocent misrepresentation. The plaintiffs argue that the court erroneously concluded that innocent misrepresentation claims are not applicable in personal injury actions.[8] The defendants respond that claims of innocent misrepresentation are based on commercial rela-

tionships between the parties and, because the plaintiffs did not allege products liability claims against Hines or Urogynecology, the court properly directed a verdict in their favor. We agree with the defendants.

The following additional facts and procedural history are relevant to our resolution of this issue. In the operative complaint, the plaintiffs alleged against the defendants, inter alia, counts of innocent misrepresentation, negligent misrepresentation, and intentional misrepresentation. In court on January 15, 2016, the defendants argued their motion for judgment and directed verdict. The defendants' counsel argued, inter alia, that "I will be candid with the [c]ourt and everyone, I don't know what an innocent misrepresentation claim is. I . . . don't even really understand how you can innocently misrepresent something." During this argument, the court stated that "I have been unable to find any case law that would indicate that this is a doctrine that's applicable to personal injury cases. The only cases I've been able to find deal with nonpersonal injury cases, a sinking house, a sale of various products, boundary line disputes, that sort of thing, not anything to do with personal injuries. I . . . may be missing them, but I was unable to find any . . . ."

The defendants also filed with the court a memorandum of law in support of their motion for judgment/ directed verdict asserting that the plaintiffs could not make a claim for innocent misrepresentation in a personal injury action, and argued the following: (1) there can be no claim for innocent misrepresentation for personal injury; (2) cases cited by the plaintiffs in their request to charge do not support a theory for innocent misrepresentation in personal injury actions; and (3) the plaintiffs cannot request economic and noneconomic damages for innocent misrepresentation. The plaintiffs did not produce any authority to establish that claims of innocent misrepresentation are applicable in personal injury cases. Thus, the court granted the defendants' motion for judgment and directed verdict on the plaintiffs' claim of innocent misrepresentation.

"Whether the evidence presented by the plaintiff was sufficient to withstand a motion for a directed verdict is a question of law, over which our review is plenary. . . . Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party."

(Internal quotation marks omitted.) *Demiraj* v. *Uljaj*, 137 Conn. App. 800, 804, 50 A.3d 333 (2012).

"This court has long recognized liability for innocent misrepresentation. The elements of this cause of action are (1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation [made] by the defendant and (5) damages." (Internal quotation marks omitted.) *Matyas* v. *Minck*, 37 Conn. App. 321, 333, 655 A.2d 1155 (1995). "In Connecticut, a claim of innocent misrepresentation . . . is based on principles of warranty, and . . . is not confined to contracts for the sale of goods. . . . A person is subject to liability for an innocent misrepresentation if in a sale, rental or exchange transaction with another, [he or she] makes a representation of material fact for the purpose of inducing another to act or to refrain from acting in reliance upon it . . . even though it is not made fraudulently or negligently. . . . We have held that an innocent misrepresentation is actionable, even though there [is] no allegation of fraud or bad faith, because it [is] false and misleading, in analogy to the right of a vendee to elect to retain goods which are not as warranted, and to recover damages for the breach of warranty. . . ." (Citations omitted; internal quotation marks omitted.) *Gibson* v. *Capano*, 241 Conn. 725, 730, 699 A.2d 68 (1997).

"In Connecticut law, strict liability for innocent misrepresentation in the sale of goods is well established." *Johnson* v. *Healy*, 176 Conn. 97, 101, 405 A.2d 54 (1978). "[L]iability in tort, even for misrepresentations which are innocent, has come to be the emergent rule for transactions that involve a commercial exchange." Id., 100–101. The tort of innocent misrepresentation, separate and distinct from the tort of negligent misrepresentation, is predicated on principles of warranty. See *Kramer* v. *Petisi*, 285 Conn. 674, 686 n.10, 940 A.2d 800 (2008). Our case law has established that "liability for innocent misrepresentation is not a novelty in this state, that such liability is based on principles of warranty, and that such warranty law is not confined to contracts for the sale of goods." *Johnson* v. *Healy*, supra, 102.

Section 552C of the Restatement (Second) of Torts provides: "(1) One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though [the representation] is not made fraudulently or negligently. (2) Damages recoverable under the rule stated in this section are limited to the difference between the value of what the other has parted with and the value of what he has received in

the transaction."

On the basis of the stated authority, it is apparent that innocent misrepresentation claims primarily apply to business transactions, typically between a buyer and seller, and that the theory is based on principles of warranty.[9] Additionally, secondary sources explain that liability for an innocent misrepresentation is likely when "the representer stands to gain by a misrepresentation at the expense of the other party to the transaction [who was] induced by the misrepresentation." 2 Harper, James, & Gray on Torts (3d Ed. 2006) § 7.7 p. 494. In the present case, the plaintiffs and the defendants are not parties to a commercial transaction. The plaintiffs did not allege breach of warranty claims against the defendants, nor did the plaintiffs allege that the defendants received some benefit as a result of Mary Beth's reliance on Hines' alleged misrepresentation. Moreover, it is not clear what the measure of damages would be were the plaintiffs able to recover on their innocent misrepresentation claim. See *Johnson* v. *Healy*, supra, 176 Conn. 106 ("[t]he proper test for damages [is] the difference in value between the property had it been as represented and the property as it actually was"); see also 3 Restatement (Second), Torts § 552C (2) (1976) ("[d]amages recoverable under the rule stated in this section are limited to the difference between the value of what the other has parted with and the value of what he has received in the transaction").

Although our decisional law has acknowledged that claims for innocent misrepresentation are not limited to contracts for the sale of goods; see, e.g., *Johnson* v. *Healy*, supra, 176 Conn. 102; it is unclear whether such claims are applicable to cases such as this, where the plaintiffs are claiming a lack of informed consent and are not involved in a commercial transaction. The Restatement suggests that there must be a form of business transaction involved when making a claim for innocent misrepresentation.[10] Accordingly, although we are mindful that this specific issue has not been subjected to appellate review in this context, we conclude that the theory of innocent misrepresentation is not applicable in the present case, and that the court properly directed a verdict in favor of the defendants on this claim.

IV

The plaintiffs' final claim on appeal is that the court improperly declined to instruct the jury on the concept of misrepresentation[11] due to Hines' lack of sufficient knowledge. The plaintiffs argue that, because their request to charge was relevant to the issues in the case and contained an accurate statement of the law, the court had to issue the instruction. The defendants respond that the issue is not preserved and, alternatively, that the substance of the request was given to the jury through the court's charge. We agree that the

court's charge adequately conveyed the substance of the plaintiffs' requested charge.

The following additional facts and procedural history are relevant to this claim. On January 15, 2016, the plaintiffs filed with the court a supplemental request to charge. The plaintiffs requested that the court instruct the jury that "[r]epresentations made by one who is conscious that he has no sufficient basis of information to justify them are actionable as representations made with positive knowledge of their falsity, because in making them the speaker misrepresents not only the external facts but also the extent of his own information." In an e-mail exchange between the court and the parties, the court indicated that, although the plaintiffs' request was "not specifically adopted, [the court] feel[s] the issues are adequately covered in [its] draft [jury charge]." The plaintiffs did not take exception to the charge or otherwise object to the absence of their requested instruction.

"It is well settled . . . that a party may preserve for appeal a claim that an instruction . . . was . . . defective either by: (1) submitting a written request to charge covering the matter; *or* (2) taking an exception to the charge as given . . . . [T]he purpose of the [preservation requirement] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials. . . . Thus, the essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given." (Citations omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 424–25, 78 A.3d 76 (2013). In the present case, the plaintiffs submitted a written request to charge, thereby giving the court fair notice of their view of the governing law. Accordingly, the plaintiffs' failure to object or take exception to the charge as given does not preclude our review of this claim. We therefore turn to the merits of this claim.

"The primary purpose of the charge to the jury is to assist [it] in applying the law correctly to the facts which [it] find[s] to be established. . . . [A] charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . a refusal to charge in the exact words of a request . . .

will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 137 Conn. App. 696, 701, 49 A.3d 1025, cert. denied, 307 Conn. 920, 54 A.3d 563 (2012).

Regarding negligent misrepresentation, the court instructed, inter alia, that "[o]ne whose business or profession it is to give information upon which the bodily security of others depends and who in his business or professional capacity gives false information to another, is subject to legal liability for bodily harm caused by the action taken in reliance upon such information by the recipient, if although believing the information is accurate, he failed to exercise reasonable care, to ascertain its accuracy, or in his choice of the language in which it was given."

Additionally, when charging the jury regarding intentional misrepresentation, the court stated: "In general, a person who undertakes to speak, that person assumes a duty to tell the whole truth and to make a full . . . and fair disclosure as to the matters about which the person assumes to speak. There is a duty to provide accurate information once one undertakes to speak. Under the law of fraudulent concealment . . . and suppression, a duty to disclose may exist where one voluntarily undertakes to speak, but fails to prevent his or her words from being misleading or conveys only partial information. Thus . . . when a party makes a partial disclosure then . . . the party then has the duty to tell the whole truth. A party is under a duty to disclose in order to prevent a partial statement of the facts from being misleading or conveying a false impression. There is no basis for making a distinction between an oral half-truth and a written one, and when a party makes a partial disclosure, the party then has a duty to tell the whole truth."

In the case at hand, the court's charge sufficiently conveyed the substance of the plaintiffs' requested charge, even though the court did not use the precise language that the plaintiffs requested. The substance of the plaintiffs' request, in summary, was that if Hines knew he did not have a sufficient basis of information for the representations he made to the plaintiffs at the time he made them, it is the equivalent of Hines making a knowing misrepresentation to the plaintiffs. As the cited portions of the jury instructions show, the court instructed the jury as such, albeit in different terms. The court instructed that if Hines did not disclose all the information he knew about the product and conveyed a false impression, on which the plaintiffs relied to their detriment, then the jury could hold the defendants liable for negligent and/or intentional misrepresentation.

Accordingly, we conclude that the substance of the requested instructions was fairly and substantially included in the court's jury charge and, therefore, that it did not improperly decline to instruct the jury as the plaintiffs had requested.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We refer to Mary Beth Farrell and Vincent Farrell collectively as the plaintiffs and individually by first name.

[2] The plaintiffs brought this action against the following defendants: Johnson & Johnson; Ethicon, Inc.; Ethicon Women's Health and Urology, a Division of Ethicon, Inc.; Gynecare, a Division of Ethicon, Inc.; American Medical Systems, Inc.; Stamford Hospital System, Inc.; Hines; and Urogynecology. On July 10, 2015, the plaintiffs withdrew their claims against American Medical Systems. On January 6, 2016, the plaintiffs withdrew their claims against Johnson & Johnson, Ethicon, Inc., Ethicon Women's Health and Urology, and Stamford Hospital. On January 11, 2016, the plaintiffs withdrew their claim against Gynecare, a division of Ethicon, Inc. The remaining defendants for trial were Hines and Urogynecology, and they are likewise the only defendants on appeal. We refer to Hines and Urogynecology collectively as the defendants and individually by name where appropriate.

[3] The plaintiffs claimed also that the court abused its discretion by excluding the testimony of two patients whom Hines had treated. The plaintiffs withdrew this claim at oral argument before this court.

[4] According to the American College of Obstetricians and Gynecologists, pelvic organ prolapse is defined as "a disorder in which one or more of the pelvic organs drop from their normal position . . . ." American College of Obstetricians and Gynecologists, "Surgery for Pelvic Organ Prolapse," (last modified December, 2013), available at https://www.acog.org/Patients/ FAQs/Surgery-for-Pelvic-Organ-Prolapse#what (last visited July 16, 2018).

[5] The court's instruction provided in relevant part: "At the time that some of you or maybe all of you were selected to sit as jurors in the case, the list of the defendants included Johnson & Johnson, Ethicon, Stamford Hospital, as well as [Hines]. Now, Johnson & Johnson, Ethicon, and Stamford Hospital are no longer defendants in the case. Therefore, the lawyers that you saw in connection with those [defendants] . . . will not be here . . . representing a party in the case. You will not be asked to decide any claims of legal liability with respect to [the former defendants]. The fact that [the former defendants] are no longer defendants must have no bearing on your consideration of the claims which are to be tried. You should not guess or speculate as to circumstances through which [the former defendants] were removed from the case. Do not draw any inferences favorable or unfavorable as to any party as a result of their removal from this case. Simply put it out of your mind and do not even discuss it with each other. To the extent necessary, I will deal with any legal issue arising out of their departure from this case. You will simply decide the case that is presented to you. You will not consider the absence of those parties from the case."

[6] Even assuming, arguendo, that the court did abuse its discretion by determining that the plaintiffs' counsel opened the door to referencing the former defendants, we conclude that such error was harmless. See *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 358, 907 A.2d 1204 (2006) ("[E]ven when a trial court's evidentiary ruling is deemed to be improper . . . we [still] must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong *and* harmful. . . . [T]he standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." [Emphasis in original; internal quotation marks omitted.]), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007). The court instructed the jury prior to the start of evidence that the absence of the former defendants was not to have any bearing on their decision and that it could not speculate about why the former defendants had been removed. See footnote 4 of this opinion. Additionally, after the plaintiffs' counsel had objected to the defendants' counsel's question regarding the fee agreement, the court again instructed the jury that it was not to concern itself with the absence of the former defendants. "[I]t is well established that, [i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) *Hurley* v. *Heart*

*Physicians, P.C.*, 298 Conn. 371, 402, 3 A.3d 892 (2010). There has been no showing that the jury failed or declined to follow the court's instructions not to speculate about or to consider the absence of the former defendants. Therefore, even if we assume, arguendo, that the court abused its discretion, any error was harmless.

[7] Because we believe that the court did not abuse its discretion in excluding the two journal articles in question, we need not reach the defendants' alternate argument that the exclusion of the two articles, if erroneous, was nevertheless harmless. In this regard, we note that the record reflects that the plaintiffs were successful in admitting, through their medical expert, other documentation regarding the mesh graft including: a brochure titled "Pelvic Organ Prolapse: Get the Facts, Be Informed"; and a journal article titled "Occurrence of Postoperative Hematomas After Prolapse Repair Using a Mesh Augmentation System."

[8] The plaintiffs also argue that it was "procedurally improper" for the court to direct a verdict in favor of the defendants on their innocent misrepresentation claim. Specifically, the plaintiffs argue that "[d]espite filing three summary judgment motions, the [d]efendant[s] never presented a dispositive motion claiming that innocent misrepresentation can never apply to a plaintiff who has suffered physical injuries in addition to economic loss. This issue ended up being raised sua sponte and [the] [p]laintiffs were given less than one day to come up with a case specifically allowing such a claim. This was clearly procedurally improper." We are not persuaded. A review of the trial transcript reflects that the court heard argument on the defendants' motion for judgment and directed verdict, during which the defendants argued, inter alia, that "there has been no testimony, whatsoever, on any misrepresentation that was made." The defendants also filed a written memorandum of law in support of their motion for judgment and directed verdict regarding the plaintiffs' claim of innocent misrepresentation. The plaintiffs' claim of a procedural impropriety, therefore, is without merit. We thus address only whether the court's directing a verdict was proper substantively.

[9] The facts of *Johnson* v. *Healy*, supra, 176 Conn. 97, are useful in detailing a scenario in which innocent misrepresentation is applicable. The plaintiff (buyer), inquired with the defendant (builder), about the quality of construction of a home that the builder had built. Id., 98. The builder explained that the home was constructed using the best materials, that he himself had built the home, and that nothing was wrong with the home's construction. Id., 98–99. The buyer reasonably relied on the builder's representations, which induced the buyer to purchase the home. Id., 99, 102–103. The home then sustained damage because of its uneven settlement, which occurred as a result of improper fill being placed on the lot on which the home was built some time before the builder bought the lot. Id., 99. On the basis of these facts, our Supreme Court determined that the builder could be held liable for the damage to the home on a theory of innocent misrepresentation, even though the builder had no actual or constructive knowledge of the condition that caused the damage to the home. See id., 99, 102–103. The court determined that the proper measure of damages was the difference in value between the house as the builder represented and the house as it actually was. Id., 106.

[10] There is a caveat noted in Section 552C of the Restatement (Second) of Torts, which provides: "The Institute expresses no opinion as to whether there may be other types of *business transactions*, in addition to those of sale, rental and exchange, in which strict liability may be imposed for innocent misrepresentation under the conditions stated in this Section." (Emphasis added.)

[11] Because we have determined that innocent misrepresentation is not applicable in the present case and that the court properly directed a verdict on that claim, we need not consider whether the court improperly failed to instruct the jury on the concept of innocent misrepresentation due to Hines' lack of sufficient knowledge. The plaintiffs' counsel conceded this point at oral argument. Therefore, this section addresses only whether the court properly instructed the jury on the concepts of negligent and intentional misrepresentation due to Hines' lack of sufficient knowledge.

———————————————